**ORDERED.**

**Dated: August 26, 2008**

**EILEEN W. HOLLOWELL**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

In re:

JOANN LYNN CORBETT,

        Debtor.

_____

JOANN LYNN CORBETT,

        Plaintiff,

v.

SALLIE MAE SERVICING CORP.
and EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Chapter 7

Case No. 4-02-bk-06249-EWH

Adversary No. 4-07-ap-00003

**MEMORANDUM DECISION**

## I. **INTRODUCTION**

Debtor served her student loan discharge complaint and obtained a default judgment against the only entity that corresponded with her about her defaults prior to the entry of the default judgment. That entity was a servicer which did not own her loans. Years later, the same servicer resumed collection efforts on behalf of an entity which asserts that it holds both ownership and guarantor interests in the loans, Educational Credit Management Corporation ("ECMC"). ECMC claims that the default judgment is not a bar to collection efforts because the debtor did not properly serve her complaint and served on the wrong parties. Because the service satisfied constitutional due process requirements, it was adequate, and, therefore, the default

judgment bars further collection efforts binding on the loans.  The reasons for this holding are explained in the balance of this decision.

## II. **FACTS**

Between 1990 and 1996, Joann Lynn Corbett ("Debtor") obtained six student loans ("Loans") from First Interstate Bank and Wells Fargo Bank.  The Loans were made through the Federal Family Education Loan Program (the "FFELP Program"). The funds lent under the FFELP Program are provided by banks and other lenders, guaranteed by state agencies and reinsured by the federal government.  United Student Aid Funds, Inc. ("USA Funds") was designated as guarantor for the state of Arizona, and guaranteed the repayment of the Loans.  No evidence was presented that the Debtor was notified prior to the entry of the default judgment that the Loans were guaranteed or that USA Funds was the guarantor of the Loans.

At various times between 1994 and 1997, the Loans were purchased by an entity known as Student Loan Marketing Association ("SLMA").  There is no record that the Debtor was notified of those sales.  In November 2002, Sallie Mae Servicing Corporation ("SMS") corresponded with the Debtor regarding defaults on the Loans. Student loan servicing companies such as SMS (which became Sallie Mae, Inc. sometime after 2003)[1] assist student loan lenders and guarantors by "issuing repayment booklets, collecting payments, tracking loan balances and keeping in touch with the borrower during the life of the loan."[2]

On December 12, 2002, the Debtor, assisted by a pro bono lawyer, filed a no asset Chapter 7 case.[3]  Creditors were advised in the Notice of First Meeting of

---

[1]  Exhibit 5 at # 25. ECMC Statement of Facts, Docket # 25.

[2]  Exhibit 5 at # 14. ECMC Statement of Facts, Docket # 25.

[3]  Case no. 02-bk-06249, Docket # 1.

2

Creditors not to file proofs of claim.[4]  On January 17, 2003, the Debtor filed a

Complaint (03-00002) ("Complaint") against SMS seeking to discharge the Loans

under 11 U.S.C. § 523(a)(8).  On January 23, 2003, the Debtor served the

Complaint on SMS by certified, first-class mail at the following addresses:

> Sallie Mae Servicing Corp.
> P.O. Box 11509
> Killeen, Texas 76547-1509
>
> Sallie Mae Servicing
> P.O. Box 9500
> Wilkes-Barre, Pennsylvania 18773-9500

The service was not addressed to a specific person or addressed to the

attention of an officer, manager or general agent.  On February 18, 2003, a certified

copy of the alias summons and Complaint were served on:

> Sallie Mae Loan Servicing
> c/o CT Corporation System
> 3225 North Central Avenue
> Phoenix, Arizona 85012

The Debtor's counsel received signed certificates of receipt for all three

addresses used to serve the Complaint, which demonstrate that the Complaint was

delivered to all three addresses in January and February, 2003.  On January 2,

2002, SMS filed a "Dissolution/Withdrawal" of doing business in Arizona.  On

February 20, 2003, CT Corporation signed a receipt acknowledging receipt of the

Complaint.

After the Debtor filed the Complaint, the Loans went through a series of

transfers.  ECMC asserted in an earlier Motion to Dismiss[5] that SMS filed a proof of

claim on January 29, 2003, on behalf of SLMA Trust.  There is no such proof of

claim on the electronic docket and the proof of claim is not mentioned in ECMC's

Statement of Facts in Support of its Motion for Summary Judgment ("Statement of

---

[4]  Case no. 02-bk-06249, Docket #2.

[5]  Case no. 07-ap-00003, Docket # 9.

3

Facts"). ECMC's Motion to Dismiss also asserted that on January 29, 2003, SLMA Trust made a claim against USA Funds, as guarantor, and that the Loans were then transferred to USA Funds.

The Statement of Facts does not refer to a January 29, 2003 transfer of the Loans to USA Funds, but asserts that "sometime" in 2003 SLMA Education Credit Finance Corporation acquired the Loans as part of SLMA's efforts to wind down its operations. It is unclear from what entity SLMA Education Credit Finance Corporation acquired the Loans or what the relationship of that purported transfer had on USA Funds as guarantor.[6]

On May 5, 2003, USA Funds transferred the Loans to ECMC.[6] According to ECMC, under its specialized contract of guaranty with the Department of Education, ECMC "takes over: any loans at the start of an adversary proceeding concerning a guarantor's rights."[7] There is no evidence that the Debtor was notified of the Loans' many post-Complaint transfers.

SMS did not timely file an answer, and, on May 22, 2003, a default was entered against SMS. On June 5, 2003, almost five months after the Complaint was mailed to SMS and CT Corporation, and a month after ECMC "took over" the Loans, a default judgment ("Default Judgment") was entered against SMS.

---

[6] ECMC's Statement of Facts is based primarily on the affidavit of the Director of the Bankruptcy Litigation Unit for Sallie Mae, Inc. The affidavit provides no documentation for most of the post-Complaint transfers of the Loans. The affidavit does include a 2007 Sallie Mae Business Organization Chart but the chart is of little assistance in deciphering the Loans' ownership. For example, SLMA Education Credit Finance Corporation appears on the chart under Acquisition and Funding, which does not explain why it would have acquired the Loans in 2003 rather than between 1994 and 1997 when the Loans were sold by the originating banks.

[6] Statement of Facts, ECMC's Motion to Dismiss, Docket # 9, Page 3, Lines 9-13.

[7] Because no documents regarding the transfer were attached to ECMC's Statement of Facts, it is not clear what "taking over" means -- but in other parts of its Motion, ECMC asserts that it is the current holder and owner of the Loans. Statement of Facts, ECMC's Motion for Summary Judgment, Docket #25, Page 4, Lines 2-4.

4

1    On the same days as entry of the Default Judgment, ECMC filed a notice of

2   appearance in both the administrative and adversary cases.[8]  Thereafter,

3   discussions apparently occurred between ECMC's counsel and the Debtor's counsel

4   in which ECMC requested that the Default Judgment be vacated.  When that did not

5   occur, five days after entry of the Default Judgment, counsel for ECMC sent an

6   email ("EMAIL") to counsel for the Debtor asking him to reconsider his refusal to

7   vacate the Default Judgment.  The EMAIL asserted that the Default Judgment was

8   ineffective because SMS was not the owner of the Loans.  The EMAIL also asserted

9   that the Default Judgment had not extinguished the independent rights of the Loans

10   guarantor.  The EMAIL requested that the Default Judgment be vacated and a new

11   or amended Complaint be filed against the "proper parties in interest."  The EMAIL

12   attached case authority regarding student loan guarantors' rights.  The EMAIL did

13   not identify the owner or guarantor of the Loans.  The EMAIL also asserted that

14   collection efforts would continue.  There is no record of any response to the EMAIL

15   from Debtor's counsel.

16       The Debtor received a Chapter 7 discharge on April 15, 2003.  On

17   September 11, 2003, the adversary case was terminated.  The administrative case

18   was closed on September 23, 2003.

19       Beginning in May 16, 2006, Sallie Mae, Inc. ("Sallie Mae"), as successor to

20   SMS, began sending collection notices to the Debtor.  On June 1, 2006, the Debtor's

21   counsel sent Sallie Mae a letter asserting that the Default Judgment had discharged

22   the Loans.[9]  Sallie Mae, however, continued its collection efforts.  On July 17, 2006,

23   the Debtor's counsel reopened the Debtor's case.

24

25

26   _____

      [8]  Case no. 02-bk-06249, Docket # 6.

27
      [9]  Complaint, Exhibit 5.
28

5

### III. PROCEDURAL HISTORY OF THE REOPENED CASE

On December 12, 2007, the Debtor commenced the present action ("Adversary") in which she alleges Sallie Mae (previously SMS), violated the discharge injunction, the Fair Debt Collection Practices Act ("FDCPA") and Fair Credit Reporting Act ("FCA") by reporting to various credit bureaus that the Debtor was in default on the Loans. Included in the Debtor's request for relief is an order directing Sallie Mae and "its assignees and those in concert with them" to cease all activities in violation of the discharge. On May 30, 2007, ECMC filed a motion to intervene asserting that ECMC claimed an interest in the Loans as the current owner and holder of the Loans.[10] That unopposed motion was granted on June 18, 2007.

On July 18, 2007, ECMC filed a Motion to Dismiss the Adversary on the grounds that: (1) the Court lacked subject matter jurisdiction over the non-core FDCPA and FCA claims; and (2) the Default Judgment was entered against the wrong entities. On September 11, 2007, the Court, following Walls v. Wells Fargo Bank, N.A., 276 F.3d 502 (9th Cir. 2002), dismissed the Adversary's FDCPA and FCA claims, but denied the balance of the Motion to Dismiss. Thereafter, ECMC timely filed an answer, but Sallie Mae did not. ECMC was given a deadline of October 19, 2007 to submit a motion for summary judgment, which it asserted would dispose of the balance of the Debtor's claims. ECMC did not submit a motion for summary judgment by the deadline. At a status conference on November 27, 2007, counsel for ECMC restated ECMC's intention to file a motion for summary judgment. A February 27, 2008 trial date was set, so there would be ample time to consider ECMC's motion for summary judgment. On February 26, 2008, one day prior to the trial date, ECMC submitted a motion for summary judgment ("Motion for Summary Judgment"). On the morning of the scheduled trial, ECMC filed a motion to continue the trial. Because the motion to continue was untimely, it was denied. At the trial, it

---

[10] 07-ap-00003, Docket #5.

6

1  was determined that the only contested factual issue was the extent of Debtor's

2  damages.  The Debtor testified and was cross-examined.  In response to a question

3  on cross-examination by ECMC's counsel, Debtor denied knowing that the Loans

4  were guaranteed and denied knowing about any owner of the Loans other than

5  Sallie Mae (formerly SMS).  With the consent of the Debtor's counsel, I agreed to

6  consider the remaining issues by deciding the Motion for Summary Judgment once it

7  was fully briefed.  The briefing was concluded on April 4, 2008.[11]

8      On May 7, 2008, at oral argument, I requested, but did not require,

9  supplemental briefs on the effect of the Default Judgment on any guarantor of the

10  Loans.  Additionally, I directed the parties to submit a Statement of Stipulated Facts.

11  The Debtor submitted a supplemental brief on May 28, 2008.  ECMC did not submit

12  a supplemental brief.  A Statement of Stipulated Facts was not submitted because

13  ECMC failed to participate in the process.[12]  The matter is now ready for decision.

14

15          **IV.  STATEMENT OF JURISDICTION**

16      Jurisdiction is proper under 28 U.S.C. §§ 1334(a) and 157(b)(2)(I).

17

18              **V.  ISSUES**

19  1.      Was service of the Complaint effective?

20  2.      If service was effective, what entities are bound by the Default

21          Judgment?

22

23

24

25

26  _____

    [11]  The Debtor's Response to the Motion for Summary Judgment included a request
    that Sallie Mae be defaulted for failing to timely file an answer.

27

28      [12]  The Debtor's Supplemental Brief, Page 2.

7

# VI.  DISCUSSION

A.   The Motion for Summary Judgment Is a Request for Relief Under Fed. R. Bankr. P. 9024

Through the Motion for Summary Judgment, ECMC moves to void the Default Judgment for improper and inadequate service.  The parties agree that there are no facts in dispute, so the only issues are issues of law.

ECMC does not cite Fed. R. Civ. P. 60(b), incorporated by Fed. R. Bankr. P. 9024, in its Motion for Summary Judgment.  ECMC asserts, however, that the Default Judgment has "no force and effect."  Therefore, Rule 60(b) is applicable. Under Rule 60(b), a court may relieve a party from judgment for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or other misconduct; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) any other reason justifying relief from operation of judgment.  Rules 60(b)(1); (2) and (3) must be raised within one year of entry of the Default Judgment and, therefore, are inapplicable.

Rule 60(b)(6) requires that a request for relief from judgment be made within a reasonable time.  What qualifies as a reasonable time "depends on the facts of each case."  United States v. Holtzman, 762 F.2d 720, 725 (9th Cir. 1985).  The relevant facts may include the length and circumstances of the delay and the possibility of prejudice to the opposing party.  Id.  As explained later in this decision, ECMC had notice of the Complaint a month before the Default Judgment was entered and did not file a notice of appearance until the day the Default Judgment was entered.  ECMC's almost five-year delay in bringing the Motion for Summary Judgment is not within a "reasonable time" for the purpose of Rule 60(b)(6). Therefore, for ECMC to prevail, it must demonstrate that it is entitled to relief from the Default Judgment under Rule 60(b)(4).

The Ninth Circuit has consistently held that a "final judgment is 'void' for purposes of Rule 60(b)(4) if the court that considered it lacked jurisdiction, either as

8

to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law." United States v. Berke, 170 F.3d 882, 883 (9th Cir. 1999). If a judgment is void, a motion to set it aside may be brought at any time. Owens-Corning Fiberglas Corp. v. Crt. Wholesale, Inc. (In re Ctr. Wholesale, Inc.), 759 F.2d 1440, 1448 (9th Cir. 1985). Because there is no time deadline under Rule 60(b)(4), ECMC's arguments regarding the improper service and service on the improper parties must be addressed.

B.    Was the Complaint Properly Served?

ECMC claims that service was improper for two reasons. First, service on Sallie Mae was improper under Fed. R. Bankr. P. 7004(b)(3). Second, the wrong entity was served because SLMA, not Sallie Mae, owned the Loans when the Complaint was filed.

1.    Service Under Rule 7004(b)(3)

The Federal Rules of Bankruptcy Procedure require that "a proceeding to determine the dischargeability of a debt" be an adversary proceeding. Fed. R. Bankr. P. 7001(6). Rule 7004(a) directly incorporates Fed. R. Civ. P. 4(c)(1), which mandates that the summons be served "together with a copy of the complaint." Fed. R. Bankr. P. 7004(a), incorporating Fed. R. Civ. P. 4(c)(1). Service by mail upon a corporation must be directed to the same persons that Civil Rule 4(h)(1) requires be served: to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Fed. R. Bankr. P. 7004(b)(3), incorporating Fed. R. Civ. P. 4(h)(1).

In the Ninth Circuit, service on a corporation under Fed. R. Civ. P. Rule 4 is a flexible rule that should be liberally constructed so long as a party receives sufficient notice of the complaint. United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984). However, "neither actual notice, nor simply naming the defendant in the complaint will provide personal

9

jurisdiction absent substantial compliance" with Rule 4. <u>Benny v. Pipes</u>, 799 F.2d 489, 492 (9th Cir. 1986), <u>cert</u>. <u>denied</u>, 484 U.S. 870, 108 S.Ct. 198 (1987). Generally, the litigant attempting to effect service is responsible for proper service and bears the burden of proof. <u>In re Villar</u>, 317 B.R. 88, 94 (9th Cir. BAP 2004). However, a defendant moving to vacate a default judgment based on improper service of process, where the defendant had actual notice of the original proceeding but delayed in bringing the motion until after entry of default judgment, bears the burden of proving that service did not occur. <u>S.E.C. v. Internet Solutions for Business Inc.</u>, 509 F.3d 1161, 1165-66 (9th Cir. 2007); <u>see also The Resolution Trust Corp., as Receiver for Lincoln Sav. and Loan Ass'n, F.A. v. Bowen</u>, 2008 WL 2001270, at n.1 (D.Ariz. May 7, 2008).

The Debtor first attempted to serve SMS by certified mail. The notices were sent by certified mail to two P.O. Box addresses used by Sallie Mae. The notices were not addressed to the attention of an officer or agent. Only if the notice is "directed to a corporation and the attention of an officer or agent as identified in Rule 7004(b)(3)," can it be considered to have been received by a person who is charged with responding to the service. <u>In re Villar</u>, 317 B.R. at 94-95. Therefore, addressing the notice to "nobody in particular does not satisfy the requirement of mailing a copy to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." <u>In re Loloee</u>, 241 B.R. 655, 660 (9th Cir. BAP 1999). Because the Debtor failed to address the P.O. Box letters to an agent or officer of Sallie Mae, the service did not comply with Fed. R. Bankr. P. 7004(b)(3).

The Debtor's other attempt at service was to send notice by certified mail to CT Corporation System ("CT Corporation") as the statutory agent of SMS. ECMC asserts that service on CT Corporation was procedurally incorrect as SMS had withdrawn from conducting business in Arizona at the time of the service. Under Arizona law, a foreign corporation authorized to conduct affairs in the state is

10

1   required to list a statutory agent authorized to accept service of process on its

2   behalf.  A.R.S. § 10-11507.  Prior to withdrawal of a foreign corporation's authority to

3   conduct affairs in the state, the corporation is required to submit an Application for

4   Withdrawal with the Arizona Corporation Commission.  A.R.S. § 10-11520(A).  An

5   Application for Withdrawal must include a provision revoking the authority of the

6   foreign corporation's statutory agent to accept service on its behalf.  A.R.S. § 10-

7   11520(B)(3).  The Application for Withdrawal must appoint the Corporation

8   Commission as the foreign corporation's agent authorized to accept service of

9   process on its behalf.  Id.  Withdrawal of the foreign corporation is not effective until

10  the Application for Withdrawal has been filed by the Corporation Commission.

11  A.R.S. § 10-11520(E).  Prior to filing of the Application for Withdrawal, the

12  Corporation Commission is required by statute to determine if the application

13  conforms with all provisions of A.R.S. § 10-11520, including the revocation of the

14  statutory agent's authority.  Id.

15          ECMC's evidence in support of its claim that Sallie Mae had withdrawn

16  from doing business in 2002, is a 2008 screen printout from the Arizona Corporation

17  Commission's website, not a copy of the Application for Withdrawal.  The screen

18  printout indicated a "Withdrawal Completed" date for Sallie Mae of January 8, 2002

19  and a final "annual report" dated April 27, 2001.[13]  While the 2008 screen printout is

20  probably not the best evidence of Sallie Mae's withdrawal, the Debtor has no

21  evidence to the contrary.  Accordingly, Sallie Mae presumably revoked CT

22  Corporation's authority to act as its statutory agent in 2002 in its Application for

23  Withdrawal as required by A.R.S. § 10-11520(B)(3).  As a result, the Arizona

24  Corporation Commission, not CT Corporation, was the correct party to serve under

25  Arizona law at the time the Complaint was filed in 2003.  See A.R.S. § 10-

26

27          [13]  The screen printout also listed a document located in the microfilm depository
        titled "withdrawal" and dated January 8, 2002.
28

11

1   11520(F).[14]  Therefore, the Debtor's service on CT Corporation failed to strictly

2   comply with the requirement of Rule 7003(b)(3) to serve an agent appointed by law

3   for the receipt of process.  See Guzman v. Montgomery Ward & Co., 9 Ariz.App.

4   186, 450 P.2d 427 (Ariz.App. 1969) (finding a foreign corporation's revocation of the

5   authority of its statutory agent six days before service of summons constituted

6   sufficient justification for order quashing service).  In her Response to the Motion for

7   Summary Judgment, the Debtor asserts she was never informed that CT

8   Corporation was not authorized to accept service for Sallie Mae, but cites no statute

9   or case law which demonstrates that she was entitled to such notice.

10          While the Debtor failed to strictly comply with the procedures of Rule

11  7004, ECMC waited four years to challenge the Default Judgment.  Despite filing a

12  notice of appearance in 2003, in time to file a motion to alter, amend or set aside the

13  Default Judgment under Fed. R. Bankr. P. 9023, incorporating Fed. R. Civ. P. 59,

14  ECMC did not do so[15].  The issue is, therefore, not whether ECMC might have

15  prevailed under Rule 59, rather whether ECMC is now entitled to relief under

16  Rule 60(b)(4).

17          2.    Due Process Service

18          Merely erroneous procedure in notice is not sufficient for Rule 60(b)(4)

19  relief from judgment unless the circumstances cross over the line from mere error to

20  error that violates the due process clause of the Fifth Amendment.  In re Ctr.

21  Wholesale, 759 F.2d at 1448 (9th Cir.1985); see also In re Loloee, 241 B.R. at 660.

22          Due process requires "notice reasonably calculated, under all the

23  circumstances, to apprise interested parties of the pendency of the action and afford

24  them an opportunity to present their objections."  Mullane v. Cent. Hanover Bank &

25  Trust Co., 339 U.S. 306, 314 (1950).  The adequacy of the notice depends upon the

26  _____

27  [14]  After the withdrawal of the corporation is effective, service of process on the
    commission under this section is service on the foreign corporation.

28       [15]  Motions under Rule 59 must be made within ten days of entry of the judgment.

12

factual context in which it is given.  See In re Ctr. Wholesale, 759 F.2d at 1448.  The notice that is required "will vary with the circumstances and conditions."  Jones v. Flowers, 547 U.S. 220, 226 (2006) (quoting Walker v. City of Hutchinson, 352 U.S. 112, 115, (1956)).  If there is reason to think that notice may not have been effective, then "additional reasonable steps may be needed if practicable to do so."  Jones, 547 U.S. at 234.

The Ninth Circuit BAP addressed due process service in In re Villar, 317 B.R. 88 (9th Cir. BAP 2004).  "[T]he standards for service on individuals and corporations are to be liberally construed to further the purpose of finding personal jurisdiction in cases in which the party has received *actual notice*."  Id. at 94 (quoting In re Outlet Dep't Stores, 49 B.R. 536, 540 (Bankr. S.D.N.Y. 1985)) (emphasis added).

In Villar, the BAP found that due process was violated because the party-in-interest did not receive actual notice nor any other "acceptable substitute for procedural notice requirements so as to save the order . . . from constitutional due process concerns."  In re Villar, 317 B.R. at 94 (quoting In re Ex-cel Concrete Co., 178 B.R. 198, 203 (9th Cir. BAP 1995)).  Unlike Villar, in this case there is evidence of actual notice to the party-in-interest.  As set forth in the Facts, whenever litigation is commenced which concerns the interest of a student loan guarantor, ECMC "takes over" the subject loan under its "specialized contract of guaranty" with the Department of Education.[16]  Absent actual knowledge of the proceeding, ECMC would not have become the holder of the Loans' ownership and guarantors' rights, in May 2003.  Therefore, unlike Villar, there is evidence in this case that a person responsible for litigation received actual knowledge of the filing of the Complaint.  However, establishing actual knowledge of a party-in-interest by itself is insufficient to determine the adequacy of notice under the due process standard.

---

[16]  Statement of Facts, ECMC's Motion for Summary Judgment, Docket # 25, Page 7, Lines 1-5.

13

1  Pipes, 799 F.2d at 492 (finding actual knowledge insufficient to establish due

2  process notice).  The notice that was actually given must be compared with the

3  notice that would have been given if procedure had been properly followed.  In re

4  Loloee, 241 B.R. at 662.

5           In this case, if service had strictly conformed with the requirement that

6  the service be addressed to an officer or agent of Sallie Mae, the result would have

7  been the same.  Since ECMC takes over loans when an adversary proceeding is

8  commenced, ECMC would have taken over the Loans as owner and holder of all of

9  USA Fund's rights as guarantor if service had strictly complied with Rule 7004.  The

10 Loans were transferred to ECMC on May 5, 2003.  ECMC had actual knowledge of

11 the Complaint for a month before the Default Judgment was entered. Therefore, the

12 notice to Sallie Mae was reasonably calculated to apprise interested parties of the

13 pendency of the action and to offer an opportunity for objections by parties-in-

14 interest to be heard.  ECMC had actual knowledge of the Complaint and the

15 opportunity to object to the entry of the Default Judgment.  Because ECMC had

16 actual knowledge of the Complaint, but delayed in bringing its motion, alleging

17 improper service until after entry of the Default Judgement, ECMC bears the burden

18 of proving service was not proper.  See Internet Solutions for Business Inc., 509

19 F.3d at 1165.

20

21       C.    Is the Default Judgment Binding on the Owner of the Loans?

22       Even if service on Sallie Mae met constitutional due process standards,

23 ECMC argues that the Default Judgment should be set aside because the Debtor

24 served the wrong entity.  Sallie Mae, as servicer, had no ownership interest in the

25 Loans.  Even though the only evidence in the record of communication between

26 Sallie Mae and the Debtor, ECMC argues that it was the Debtor's responsibility to

27 learn the identities of the owner and guarantor of the Loans.  ECMC argues that the

28 Debtor could have readily learned what entity owned the Loans when the Complaint

14

1 was filed by visiting a Department of Education's website which would have informed

2 her in its definitions section that there are Lenders, Loan Servicers and a Guaranty

3 Agency for FFLA loans. However, there is no evidence that the Debtor was ever

4 notified, before the Default Judgment was entered, by the original lenders, the

5 Department of Education, USA Funds, or ECMC of the existence of that website.[17]

6 No statutory or regulatory authority is cited which requires student loan borrowers to

7 visit a Department of Education website. There is no evidence that the Debtor was

8 notified when the Loans were acquired by SLMA. There is also no evidence that the

9 Debtor was aware of USA Funds' role as guarantor of the Loans until the EMAIL

10 was sent.

11      Student Loan borrowers, such as the Debtor, are in the same situation as

12 many consumer mortgage holders. They borrow money from an entity which then

13 transfers their loans to another entity, who may transfer the loan again and again.

14 The loan may end up in an investment pool. It may be insured or guaranteed, all

15 without any notice to the borrower. The borrower communicates solely with a

16 servicer which has agreements with the holders and guarantors of the loan, but no

17 actual ownership in the loan. However, the borrower is not a party to the guarantee

18 agreement. Borrowers are seldom notified of any of the transfers or the terms of the

19 agreements among the parties.

20      Nevertheless, some cases have "charged" debtors with the duty of giving

21 notice of the filing of a bankruptcy case to guarantors of student loans. In those

22 cases, there was enough information to put the debtor on inquiry notice of the

---

23     [17] Debtor's attorney sent the EMAIL after entry of the Default Judgment, indicating

24 that service was ineffective because Sallie Mae did not have an interest in Debtor's Loans. The EMAIL does not, however, inform Debtor's counsel who were the correct parties to

25 serve. Even though the Statement of Facts asserts that Sallie Mae routinely responds to borrowers' requests for information regarding the identity of their lenders and guarantors,

26 that information was not provided to Debtor or her counsel after Sallie Mae received the Complaint by certified mail.

27     Moreover, in other contexts, the servicer is considered the proper party-in-interest. See e.g., Greer v. O'Dell, 305 F.3d 1297, 1302-03 (11th Cir. 2002) (credit card servicer); In

28 re Woodberry, 383 B.R. 373, 379 (Bankr. D.S.C. 2008) (mortgage servicer).

15

guarantor's interest.  See In re Smith, 217 B.R. 567, 568 (E.D. Ark. 1998) (the debtor

signed loan documents in which the guarantor's interest was stated on the face of

the documents); see In re Garmhausen, 262 B.R. at 219 (the guarantor filed a

motion to intervene prior to entry of default judgment); see In re Wedell, 329 B.R. at

61 (a copy of the assignment of the claim from Sallie Mae to the guarantor was filed

with the bankruptcy court).  However, no evidence has been presented in this case

that the Debtor had knowledge of the existence of the guarantor until ECMC made

its notice of appearance and sent the EMAIL to Debtor's counsel.

Absent any statutory or specific regulatory authority, which places a duty on

student loan borrowers to know the identity of the real owners of their loans and the

existence and identity of any guarantors, or absent any facts which would have put

the Debtor on inquiry notice prior to the entry of the Default Judgment, there is no

basis to impose such a duty on the Debtor.

Furthermore, Sallie Mae, as the servicer charged with assisting SLMA with

administering and collecting the Loans, presumably was under a duty to notify SLMA

and USA Funds, as guarantor, when it received the Complaint.  In fact, it must have

done so because ECMC "took over" the Loans in May 2003, before the Default

Judgment was entered.  As noted earlier, ECMC would not have been involved

unless the guarantor's rights were at issue, and the guarantor's rights would not be

at issue unless the owner of the Loans had notice of the Complaint.  Service on

Sallie Mae, therefore, was reasonably calculated to give notice to the entities with an

interest in the Loans.

16

1    In this case, actual and sufficient notice of filing of the Complaint was

2    received by the entities with an interest in the Loans.  The Default Judgment is not,

3    therefore, void under Rule 60(b)(4).

4

5        D.    Is the Default Judgment Binding on the Guarantors?

6        ECMC asserts that even if service was adequate on the Loans' owners, the

7    Default Judgment is not binding against either USA Funds or ECMC because, as the

8    Loans' guarantor, USA Funds and its successor-in-interest, ECMC, have distinct

9    "independent" rights which entitled them to separate notice and required that the

10   Complaint be separately served on the guarantor.

11       In In re Bernal, 207 F.3d 595 (9th Cir. 2000), the Ninth Circuit addressed

12   whether a default judgment is binding on a guarantor receiving its interest by way of

13   assignment.  In Bernal, the debtor filed an adversary proceeding against the loan

14   guarantor, seeking discharge of his student loans.  Id. at 596-98.  Despite being the

15   holder of the notes at the time of being served with the Complaint, the guarantor did

16   not respond or appear.  Id.  After entry of default judgment, the guarantor assigned

17   and transferred the notes to ECMC.  Id.  Approximately one month after the default,

18   even though ECMC was not a named party, it filed an answer and counterclaim in

19   the adversary.  Id.  Approximately five months later, ECMC filed a motion to

20   intervene and to set aside the default judgment against the guarantor.  Id.

21       The Bernal bankruptcy court denied ECMC's motions.  Id. at 597.  ECMC

22   then appealed to the BAP, which affirmed.  See Educational Credit Management

23   Corp. v. Bernal, 223 B.R. 542 (9th Cir. BAP 1998).  An appeal to the Ninth Circuit

24   followed.  The Ninth Circuit held that ECMC "was bound by what had gone on

25   before" and explained:

26       Whatever rights it [ECMC] may have in the property, if any, only by
         virtue of the assignment from [guarantor], and must therefore stand in
27       [its] shoes with respect to all phases of the litigation.  The fact that
         [guarantor's] litigation may have impaired or adversely affected the
28       rights of [ECMC] under the assignment would not justify our disturbing

17

1    all prior orders and decrees entered in this controversy and
2    unfavorable to [ECMC] which were binding upon [guarantor] ... when
     made.

3    In Bernal, 207 F.3d at 598.

4         Similarly in this case, any rights or claims that USA Funds or ECMC received

5    by way of assignment from SLMA are subject to the Default Judgment.

6         ECMC asserts, however, that it also has rights against the Debtor,

7    independent of any rights it received by assignment.  ECMC cites two cases in

8    support of its position,  In re Garmhausen, 262 B.R. 217 (Bankr. E.D.N.Y. 2001) and

9    In re Wedell, 329 B.R. 59 (W.D. Wash. 2005).  In Garmhausen, the debtor owed a

10   student loan obligation to a Sallie Mae entity.  The Sallie Mae entity did not appear

11   or file an answer in the § 523(a)(8) adversary proceeding.  Id. at 219.  Prior to entry

12   of default against the Sallie Mae defendant, the guarantor paid its guarantee.  Id.

13   The Garmhausen court found that the guarantor's contingent claim was distinct and

14   separate from the claim it held by assignment.  Id. at 222-23.  Because the

15   guarantor was not given separate notice of the bankruptcy case or separately served

16   with a summons and complaint, the default judgment was not binding against the

17   guarantor's contingent claim.  Id.

18        Similarly, the court in Wedell found that a loan maker's obligation to a student

19   loan note holder and the contribution obligation that arises to a guarantor on full

20   payment of a guarantee, are two separate and distinct claims.  Wedell 329 B.R. at

21   61-62.  The Wedell court found the guarantor simultaneously held two separate

22   claims, a primary claim as an assignee of the lender and an independent contingent

23   claim.  Id.  Wedell held that the contingent claim was triggered when the guarantor

24   made payment in full on the outstanding balance of the student loan prior to entry of

25   the default judgment.  Id. at 60.  The court in Wedell, citing Garmhausen, found the

26   guarantor had rights distinct from those of the lender.  Id. at 61.  Neither Wedell nor

27   Garmhausen contain a detailed analysis of the nature of a guarantor's independent

28   rights.

18

1    The law of surety and guarantee recognizes a guarantor's right to seek

2    reimbursement from a debtor under the doctrines of exoneration, indemnification or

3    subrogation.  Poling v. Morgan, 829 F.2d 882, 885 (9th Cir. 1987).  Payment by the

4    guarantor of the debtor's obligations is required before a guarantor has a cause of

5    action under any of these doctrines.  Id. at 886 (citing Dykes v. Clem Lumber Co., 58

6    Ariz. 176, 181, 118 P.2d 454, 455 (1941)).  Therefore, payment on the underlying

7    debt is required for the guarantor to establish any independent right to payment.  In

8    this case, there is no evidence that the guarantee was paid in full by USA Funds or

9    ECMC.  This case is, therefore, distinguishable from both Wedell and Garmhausen

10   where the guarantees were paid by the guarantors prior to entry of the default

11   judgment.

12          As explained by the Restatement (First) of Security, "Where the principal has

13   received a discharge in bankruptcy in respect of a claim of a creditor for which a

14   surety is bound, the discharge in bankruptcy is a bar to the enforcement by the

15   surety of a right of reimbursement."  Restatement (First) of Security § 108(4) (1941).

16   This principle is further explained in the Restatement (Third) of Suretyship and

17   Guaranty:

18          (1) Notwithstanding § 22, the principal obligor has no duty to
             reimburse the secondary obligor to the extent that:
19          (a) bankruptcy law relieves the principal obligor of that duty;…

20          Comments
             a. Underlying obligation discharged in bankruptcy proceedings.
21          Subsection (1)(a) provides that the principal obligor has no duty
      to reimburse the secondary obligor to the extent that that duty is
22    discharged in bankruptcy proceedings.  Thus, if a secondary obligor
      performs its secondary obligation after the principal obligor has been
23    discharged from its obligations in bankruptcy, the secondary obligor will
      not be able to cause the principal obligor to bear the cost of that
24    performance.  It is important to distinguish the situation governed by
      this section from cases in which the secondary obligor performs and
25    files a claim against the principal obligor's bankruptcy estate for
      reimbursement.  In those cases, the secondary obligor's claim does not
26    duplicate a claim of the obligee, because, to the extent of the
      secondary obligor's performance, the obligee's claim has been
27    discharged.  See § 1.

28

                                       19

**Illustration:**
1. D borrows $10,000 from C. D's obligation is guaranteed by S. D defaults owing the full $10,000. D, who has no assets, files a bankruptcy petition and is discharged from all obligations to C. Later, S pays C the $10,000. S is not entitled to reimbursement from D.
2. Same facts as Illustration 1, except that S pays C the $10,000 before discharge and properly files a claim for reimbursement from the assets of D. S is entitled to reimbursement.

Restatement of Suretyship and Guaranty (Third) § 24(1)(a) cmt. a (1996).

In other words, payment to the lender prior to discharge of a debtor's obligation is required for a guarantor to establish a present right to reimbursement from a debtor. Unlike the guarantors in both <u>Wedell</u> and <u>Garmhausen</u>, there is no evidence in this case that USA Funds established an independent right to reimbursement by paying the guarantee. Therefore, because the Default Judgment discharged the Debtor's obligation to the owners of the Loans, any "independent" contingent rights to reimbursement held by USA Funds were extinguished.[18]

## VII. CONCLUSION

ECMC has failed to demonstrate that it is entitled to relief from the Default Judgment under Rule 60(b)(4) or (6). Any independent contingent rights the guarantor(s) of the Loans may have held were extinguished by entry of the Default Judgment before the guarantee was paid. Sallie Mae has failed to file an answer in this adversary. Debtor is, therefore, entitled to an entry of default against Sallie Mae. Debtor is to submit a form of order awarding taxable costs. Debtor did not establish at trial that she is entitled to damages for a willful violation of the discharge

---

[18] This is consistent with 11 U.S.C.A. § 502(e) which requires disallowance of a claim of reimbursement from an entity securing the claim of a creditor if such claim of the creditor is disallowed.

20

1  injunction.  See In re Bennett, 298 F.3d 1059, 1069 (9th Cir. 2002).  Judgments

2  consistent with the terms of this Memorandum Decision will be entered this date.

3          DATED this 26th day of August, 2008.

4

5

6  Copies served as indicated below
   this 26th day of August, 2008, upon:

7  Rob Charles, Esq.
   Lewis and Roca LLP
8  One South Church Avenue, Suite 600
   Tucson, AZ  85701-1611
9  **rcharles@lrlaw.com**

10 Madeleine C. Wanslee, Esq.
   Gust Rosenfeld P.L.C.
11 201 East Washington, Suite 800
   Phoenix, AZ  85004
12 **mwanslee@gustlaw.com**

13 By___/s/_____
        Judicial Assistant

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28